This case is Emmerich Farms, Nethers v. J.T. Marlen, Nethers, number 519-0078, are counsel ready? Ready, your honor. You may proceed. Good morning, your honor. Good morning. Counsel, justices, may it please the court. I'm Ronald E. Arlen, and I'm here today representing the plaintiff's appellants in this second round of appeals before this court. This is the second time this case has been before this court with, and as a matter of fact, it was the same panel that we had in the first time, with this court reversing Judge McCain's judgment to plaintiff of $264,830.80 on counts one and two of the complaint, and remanded to the circuit court with directions to consider the evidence in light of the plaintiff's allegations in counts three and four of the complaint. Count three is a count for quasi-contract unjust enrichment and quantum merit requesting $41,719.71 for fall tillage of and fertilization application to 100 acres of what is known as the Augsburg St. James Farm. And count four is for quasi-contract unjust enrichment and quantum merit in amount of $79,643.18 for fall tillage of 529.94 acres, and a fertilizer application to 440 acres of what is called the Butts Ingle Farms. After remand, both plaintiff and defendant filed motions for summary judgment based upon the evidence in the record, and agreed that since this court directed the circuit court to consider the evidence in light of the plaintiff's allegations in counts three and four, that the evidence is closed in this matter and no further evidence is to be considered. Before discussing the defendant's contention that the evidence contained in the record does not support a summary judgment for either count three or four, I'd like to briefly discuss a defense that apparently was raised in defendant's motion for summary judgment that was filed on July the 19th, 2018, which is in the record generally at section 31, C31, C47. They argued the same in their motion for summary judgment in the record at C38, page 8, and argued that the summary judgment oral argument before Judge McHaney on December 24, 2018. Counsel, just, I'm curious. So I know we send the case back, and then both sides file motions for summary judgment. But was it contemplated that you were going to, the court was going to hear new evidence anyway, right? No, that's not the way Judge McHaney read the mandate from the court or the way we, that I read the mandate. We read the mandate. It was very specific that they were to consider counts three and four in light of the evidence presented. And Judge McHaney, I believe, thinks and I think that that means that the evidence has been presented and we were not to do any further, any further discovery or any further hearings. Right. But both sides didn't file motions for summary judgment even though there wasn't going to be any further evidence heard. Yes, we did. Okay. Based upon the evidence in the record. All right. I just find it curious. But anyway. Well, AFTR is different. I understand. Yeah, well, I'm curious as to how it came to be that there were new evidentiary rulings that happened after remand. Well, that's that's the argument. Your Honor. I don't believe there can be any new evidentiary. Well, I'm just curious procedurally how that came to be. Well, it happened. Well, I don't know, Your Honor, that there was any evidentiary rulings. You know, the only ruling after remand is the very short docket entry by Judge McHaney that says, you know, the plaintiff's summary judgment is denied and defendants is granted. So there was no evidentiary rulings. During the arguments that I'm talking about now, during the arguments, counsel raised issues at number one, you know, that exhibit eight. Exhibit eight and nine. Exhibit eight and nine. And that's the greaterment of their argument today. So, you know, there was not any record new evidentiary findings. And in the record, you'll see that I raised that issue, and the judge didn't take issue with that. And opposing counsel, we all agreed that there was no new evidence to be taken because it was remanded with specific instructions. It wasn't a general remand. It was a remand with specific instructions. And those specific instructions were to consider the allegations of count three and four in light of the evidence. So that's and I didn't know any other way to bring it to a head other than a motion for summary judgment. I guess I could have, you know, couched it as something different. And then counsel, I think, rightfully crossed motion for summary judgment. Okay. All right. So getting back, it appeared early on during the times that I had told it that a new defense was being inserted here. And that defense was, is that if there was a specific contract, then you can't have an implied contract. And I raised that issue. I didn't argue it in the brief. And I raised that issue because it's in the pleadings, and I know that the court has allowed and many times does either affirm or deny based upon the record. And so we argue it's not there. I just want to point out to the court that that was raised for the first time after this came back, after trial, that after there's a decision from the appellate court and your mandate with specific instructions, that was the first time that it was raised. It was never raised by pleadings. It was raised in arguments. It was raised in motions, but it was never, but it is in the record. Are you referring to Exhibits 8 and 9? I'm sorry? Are you referring to Exhibits 8 and 9? No. The argument was, the argument was is that, that there was an implied contract. Oh, that legally. Yeah. The implied contract, and you couldn't have an implied contract and unjust enrichment and quantum merit. And what my brief points out in page 19 to 27 in the brief points out that that, even if you're going to allow that, which it shouldn't be, and I don't think that the judge had the power to do that because it was specific instructions. So I don't think the court, if he wanted to, could have done that, which he didn't. I just wanted to point that out, that that is a, according to the Decatur case that's cited, that's an affirmative defense, if in fact it exists in this case, and it should have been brought up at the trial level. So now to state a cause of action and prove unjust enrichment, a plaintiff must allege and prove that the defendant has unjustly retained the benefit to the plaintiff's detriment and that the defendant's retention of the benefit violates the fundamental principles of justice, equality, and good conscience. Quantum merit is similar to unjust enrichment and inquires that valuable services were furnished by the plaintiff and received by the defendant under circumstances that would make it unjust for the defendant to retain the benefit without paying. Now, the evidence in this case is clear. Excuse me just a second. That both the, what they call the Augsburg St. James Farm, and that's the subject to count three, and the Butts Ingle Farm, subject to count four, will fall tilled, and that was testified to by Benji Emmerich. Defendant James Marlin also admitted on the stand that the ground was fall tilled. It's also admitted by James Marlin that tenants do not do fall work and tillage and apply fertilizer if they are not going to farm the property. It goes without saying that if a farm is fall tilled in the fall, is tilled in the fall, and fertilizer is applied to that ground, that it will prove to the landowner, since he will not have to till the farm as much in the spring, nor apply fertilizer, at least to the extent it was applied. Now, defendants concentrate the majority of their responses to two issues. First, they say that since Judge McHaney did not make any findings, that he must have reconsidered his ruling to admit Exhibit 8. Exhibit 8 was admitted at the trial. And that is the statement for tillage and fertilizing of the Augsburg St. James Farm. And they argue, secondly, that Exhibit 9 cannot be considered since it was not admitted into evidence. Neither of these positions is well taken. Exhibit 8 was admitted over objection into evidence. And there is nothing in the record to indicate that the judge reviewed this decision, assuming in light of this court's specific, remand with specific directions, that he could reconsider that. In view of, in regard to Exhibit 9, the billings for the Butts Ingle Farm for $41,700 in 1971, but in the record, and I cited to that, and I won't quote it here, but I've cited it to it in my briefs. In the record, defendant James Marlin admitted to receiving both the invoices, Exhibit 8 and Exhibit 9. And it was admittedly, it was discussed. You know, that's in my brief and also in the record. I laid the foundation for Exhibit 9, and it just never got admitted into evidence. I failed to admit it into evidence at the end of the trial. I guess I didn't check my checklist, but it was not admitted into evidence. That's it. I'm not going to argue otherwise. However, but their belief that it is not admitted in trial is not the end of the story. The, since it was attached to the complaint, the second amended complaint, both Exhibits 8 and 9 were attached to the complaint. And the issue of being attached to the complaint and being a part of the record for all purposes is discussed extensively with citations to controlling Fifth District case law, indicating that the documents attached to a complaint and admitted to are properly considered by the court, even though not formally admitted into evidence. And that's in my reply brief at pages 8 and 9. Now, defendants argue in their brief that in spite of my efforts to have the court consider Exhibit 9 as an exhibit by reason that it's attached to the pleadings of the second amended complaint, they claim it is not evidence, and they rely on the case of Jim Nolas, Enterprises v. Duncan, 2017, Illinois, Amt 2nd, 160811. That case does say that if something's not admitted into evidence, it can't be considered in the first part of the case. It failed to give insight to the court that the last part of the case says that have, that the court goes on the stage. Nevertheless, we do not believe that all of J.K.E.'s exhibits, that was the plaintiff in that case, should have been disregarded by a trial court. A written instrument attached to a plea as an exhibit constitutes part of the pleading for all purposes and needs not be introduced into evidence to be considered. Therefore, those documents were properly considered by the trial court, citing paragraph 26. And they also cite, more importantly, 735 ILCS section 2606, which states a written instrument attached to a plea as an exhibit, and here is the statute, constitutes part of the pleadings for all purposes and need not be introduced into evidence to be considered. So by attaching it, based upon the claim, and by attaching it, and I agree with, in those cases, they cite, they just didn't look at the exception to it. And under the section then, you know, that it is in the evidence and it can be considered by the trial court whenever they're considering a summary judgment or it can be considered by this court. There are several other citations in the brief there that follow that, and I would just refer you to my brief. But none of this was discussed in the court's ruling? No. It's all raw guessing? Yes, Your Honor. I mean, the ruling just basically says they win, I lose. So, yeah, there's no findings and there's not anything. Okay. So we're left with what is in the record. Now, we've asked for a full motion for summary judgment. We've presented our evidence, and the defendant has failed to present any evidence that they did not receive and retain a benefit that would violate the principles of justice, equality, and a good conscience and allow them to keep that benefit. The record is void of any evidence presented by the defendant, for the only argument being that Exhibits 8 and 9 should not be admitted. Exhibit 8, because they speculate that the judge has reconsidered his ruling and is now allowing, and now is disallowing Exhibit 8 into evidence. And they claim that it's fatal, but I have failed to say, admit this into evidence. And I say that it's not fatal in accordance with Section 2606, the precedent that I've cited to you. Plaintiffs request that this Court reverse Judge McHaney's award of summary judgment in favor of the defendants and enter an order granting summary judgment to plaintiffs in the amount of $41,719.71 on count 3 and $79,463.18 on count 4 for a total of $121,182.89. Thank you. Thanks.  Good morning. Brian Conner for James Marlin and other defendants. Counsel, members of the Court, may it please the Court, we're here today, as counsel stated, accurately back on counts 3 and 4 with regard to a ruling that created admittedly clumsy cross motions for summary judgment. I think we have to address the idea that there's an entire body of law with regard to summary judgment, referring to affidavits, admissions on file, that the case has been tracked. There is no new evidence that comes after this Court's remand. So nobody admits any new evidence. Nobody brings any new evidence to the Court's attention. This is simply Judge McHaney tried the case. He heard all the evidence. There was an appellate remand, and now he has two counts that are admittedly different than the two counts that he ruled on previously. He ruled on two counts at law. He's now ruling on two counts in equity. So counts 3 and 4, counsel, once again accurately recited which farms those are for and how much those claims amount to. Where we begin to differ is with regards to the evidence that was brought to the Court's attention. We were essentially tasked at that cross motion for summary judgment hearing with re-arguing. We're back at the point where Judge McHaney says, okay, counsel, closing argument, right? It's the moment where he says, now let's hear what you believe this evidence means or what you believe the law is that applies to the case. That's really, regardless of what we call it, I think that's really where we were at that December hearing that produces the transcripts in the record. That's where we are. So with regards to count 4, that's the Butts Angle Farm, the ill-fated Exhibit 9 that never makes it, 79,463.18, purporting to be for tillage and fertilizer spread on the Butts Angle Farm. It wasn't offered as an exhibit. It wasn't admitted as an exhibit. It is not now evidence. It can't be. Counsel uses the back end of the Jill Knowles case to try to say, well, yes, it is. But let's look at what Jill Knowles really was. Jill Knowles is JKE's debt collection action on a written contract which requires, by law, counsel cited the statute, requires that that written instrument, let's use that word instrument carefully, that written instrument must be attached to the pleading. So that's the contract that is required. They get dismissed out of pleadings if they don't attach the written instrument. So when the court says written instrument in Jill Knowles, I believe that refers to a contract. I don't believe that means any document willy-nilly attached to the back of the thing. I think that means a specific written instrument. But we go a step further in Jill Knowles because there's an alternative account there for account stating. So they're going to have to have some kind of account reconciliation, the tag at the back of the thing, that supports their account stating. So that also is an exhibit. But, again, just because those exhibits are attached doesn't mean they prove what they purport to prove. They're there, but they don't mean that. And I think that's really the key to this appeal, which is Judge McKinney never believed, must not have believed, or he would have ruled for the plaintiffs, he must not have believed that either of those documents proved what they purported to prove. Right? So assume you agree with me for a second on count four and that's out. We're still left with count three. He let that in over our objection of the exhibit eight for the Augsburg farm. Same deal, same tillage and fertilizer spread. But he let that one in, again, over objection. But the crux of that cross-examination by trial counsel is Mr. Emmerich, you don't really know what happened, do you? And he says, yes, I do. Look, I paid this bill. Okay. Did you see anybody put the fertilizer on the farm? No. Did you see anybody do the work? No. Okay. What did you do? I paid a bill. We don't see any backup to that paying of the bill. Right. He says he did. And that might be, as Judge McHaney identified, proof of the reasonableness of the charge for the service. But it does not prove that the benefit was confirmed. Well, there was a ‑‑ I'm sure there was a complaint and answer. What was in the answer? Denied or approval or what was it in the answer? As to count three? Yeah. As to count three, I believe that was denied. Just denied that it was done. Denied that it was done generally. And then four, yeah. Essentially the same approving. Yeah. So there is that odd back and forth at that December hearing about what did we admit and what did we deny. Right. Because I think that whole diversion in the contract and preexisting contract, that's a bit of a red herring. And I know counsel is trying to say that we waived that argument. But, again, that's in defense with regards to what were we doing and when we were doing it. If you go back to 2011, when these parties were initially either ‑‑ when the fertilizer would have gotten spread, right, they're looking forward to contract years 2012 and 2013. So this is harvest of 11. During 11's harvest, on count three, the Augsburg St. James farm, they're under an existing contract. The parties here, too, are inside of a contract term at that point. They're finishing that contract. And, of course, that contract says this contract shall not be extended except by written instrument and submission. We had that argument the first time around. But I don't think it's completely irrelevant that the parties were existing under a contract at that moment because, you know, of course counsel is saying, well, there's this quantum error argument. Well, the quasi‑contract doesn't exist at the same time as express contract. So we understand the alternative theory that was about an oral contract that was going to look forward to 12 and 13. What we were, I think, very accurately saying was we never denied that there was a 2011 contract because they were obviously operating under it at that time. We denied that there was an oral contract going forward to 12 and 13. We then had that argument. And now here we are back on the underlying equity claims, which we believe require a quantum of proof that Judge McKinney never saw. He clearly believed, Judge McKinney clearly, he found credibility in favor of the plaintiffs in this case and against Mr. Marley. He told you that in the first run‑up to a ruling, I guess you would say. And so he must not believe, it's our position, looking at reading the tea leaves that were provided to us, he must not have believed that Exhibit A or Exhibit 9 proved what they reported to. And that is that a benefit was conferred on Jim Marlin. Certainly, Benji Emmer may have paid it out of pocket, but unfortunately, that's not how we get to quantum merit. That's not how we get to quasi‑contract. Just because it cost Benji Emmer or others money doesn't mean that Jim Marlin benefited from it. Again, counsel says, well, Jim Marlin admits that if that happened, it was a benefit. Sure, but we take issue with whether or not it did. But those were from crop production services, right? So there's two sets of invoices. The exhibits show the ‑‑ Marlin gets those from the Emmers. Emmers produce bills, send them to Marlin and say, pay these, and attached to those are the CBS bills. Crop production services are the folks who actually would have, if we were to believe it, put the thing down. And that's why you have to ‑‑ the important parts of Joe Goals are you can't fail to admit an exhibit in the evidence than rely on it for the purpose. And that's what they're trying to do here. They're trying to say, Judge McKinney, you have to rely on these two pieces of evidence that I think he must have said doesn't include what you said. Well, he did admit exhibit eight of objection. He did. And, I mean, isn't the argument that, look, this came in as a business record and therefore it proves ‑‑ I mean, is that what Mr. Osmond is saying? It is what Mr. Osmond is saying. But if you admit it as a business record to crop production services, certainly ‑‑ I guess that's really the question. Is it admitted as a business record of Emmer Farms, which they can prove up? Because they can't prove a crop production services business record. They can't lay that out patiently. Right? CBS could have ‑‑ any record keeper for CBS could have come in and said, yes, I mean, we're very close with business. We keep these records. We send them out to our clients, the Emmers. But, instead, this is an issue of attendance. Right? We never get to business record because it's Emmer saying, well, we got this in the course of our business of farming, and we sent it to Jim Morrow. That's one step too far. Right? Because while it may have been a business record of CBS, I got to pull the record from CBS if I want to prove that. I have to bring in the person that keeps those records, not just the people who receive them at the Emmer consortium. Right? It's one step too far. Again, we believe that somebody has to have known that that fertilizer went down and that those tillage things were performed. Benji concedes throughout his testimony he doesn't know that. Tim includes the numbers in his calculations. Okay? So, Tim, remember that Tim Emmer's testimony is all about counts one and two. He's trying to prove lost profits. So, one of the things that counsel says to Judge McHaney in that argument where we're having the closing is those amounts are subsumed within the amounts we asked for last time, which, again, may or may not be true. And Judge McHaney believed those amounts to have been true when he found that there was, in fact, a moral contract, which means just because he lets these in as evidence, he does not have to believe that he proves that a benefit was confirmed. Well, what about, let's say there's a case involving medical bills, and maybe we're still a step removed, but does the hospital account have to be present, you know, to testify that an x-ray was actually done when they send out an invoice? And so, you know, the question is, does Benji have to be there when they apply the fertilizer? And the question is well taken. Benji doesn't have to, but somebody does. Somebody with the knowledge has to be there. And, again, in like a MedMal case where you're seeking money damages, you're not seeking equity. You're not seeking equitable relief from the court. And this is one of the reasons that I quote the passage that I do about plaintiffs in desperation turning to equity now and saying, oh, we can't get what we wanted in that way. Our expectations were not realized under the contract. We're not going to grasp at these things. Unfortunately, what they're now asking people to do is take what I would call a more extraordinary step than just the money damages, because in a medical bill case, somebody's out that money. Right? Somebody's out this or that. Just because Benji Emmer concurred an expense does not necessarily mean that Jim Marlin was conferred a benefit. And that's our point. had to have hit on that in rendering a ruling that went from full damages in contract to zero. He must not have believed, and, again, he's good at resolving credibility one way or the other. He must not have believed that that exhibit proved that issue. Because, like I said, I think with regards to count four and exhibit nine, the fact that those aren't there makes it an easier analysis. But then we get to A, and he clearly knew A was in evidence. He acknowledges that in the argument that we have. And then his ruling, I think if we're going to look at the text of it, he says, I have considered the evidence. So I think at that point the only evidence that they can rely on is exhibit A, because it's in. And he's saying I considered the evidence and my judgment is zero dollars. So he does not afford them the equity. I don't believe that he believes they proved the elements of their claim. Regardless of our arguments notwithstanding, he does not believe that they have approved their claim. And that's why we believe that this Court should uphold Judge McHaney's ruling, which essentially renders it zero dollars. And granting our motion for summary judgment admittedly clumsily framed. Thank you, Counsel. Rebel? 735 ILCS 5-266 is not only for contracts. If you read it and you look at the case law, it is for if a claim or defense is founded upon a written instrument, and a copy thereof are so much of the same as relevant, must be attached. In either case, the exhibit constitutes part of the claim for all purposes. Cited in the Knowles case. Exhibit 9 is attached. Now, Counsel has tried to convince you that the record shows that nobody knows whether this fertilizer was applied. Mr. Marlin knows it was applied. He testified as such. I'm going to read you the sections of it, doing exhibit 8 and exhibit 9. This is in my brief on page 3940. Question. Me questioning Benji Emmerich. I'm going to show you what it should have been. Plaintiff's tape there. This is the invoice to Emmerich Farms that was not admitted yet. Okay. Can you identify the document and tell the Court what it is? It's an invoice from Emmerich Farms to James Marlin. All right. And did you have you seen this before? Did it come to your office? Absolutely. And did you review it before it was sent? Yes, I did. Now, the second page is the machinery cost estimate, field operations. Is that correct? Yes. And you attached that. Further, what did you attach that for? To explain what we came up with, the cost per acre for the tillage. Okay. To support that. Basically, it's a supporting document. Okay. Now, the third page and the fourth page is the crop production services invoice. What's Crops Production Services? It's a retail fertilizer company, so fertilizer, seed, and chemical. Okay. Where did you get the fertilizer to put on the prairie farm? Yes. Did you order this? Yes. Has it been paid for? Yes. Okay. And can you tell from the invoice when it was applied to the ground? Yes. If you look there, it says ship date 1029. That's in the testimony. That is testimony that's not been rebutted by the defendants. When Defendant Marlin had already admitted that he knew that the ground was tilled, so he's admitted that it had been tilled. Then when I questioned Defendant Marlin, well, they asked me. We were talking about a discussion that they had with the Emirates. They asked me if the lease that I had with Mr. Bassan, that was the person that he leased it to over the Emirates, was complete, if you will. It was a done deal, and I informed them that it was. They asked what I was going to do about the fertilizer and reached no resolution because I was still, you know, absorbing what allegedly had occurred and not really know a whole lot about it at that point in time. But the meeting ended when they advised me if I didn't pay, they were going to file suit. Did you subsequently get a bill? Yes, sir, I believe I did. I'm going to show you what's been marked as Plants Exhibit A. That is a bill covering the fertilizer and fall tillage on the Prairie Farms, an invoice from Emory Farms. Question, can you receive this? Yes, sir. Were the two pages attached to it, three pages? The best of my knowledge they were. And, next question, now that I've shown you what's in Plants 9, I ask that you be seen now. This is a bill for tillage and fertilizer applied to the Riverbottom Farm. And according to the attached invoice from Crop Production Services, that fertilization application occurred on October the 15th, 2011. Does Mr. Marlin testify? Not me. Mr. Marlin. Question, and it's 529.49 acres which had been all over the Riverbottom Farm then, correct? Yes, sir. This is nothing more than trying to really split hairs here, you know, because I failed to say I want to introduce Exhibit 9. There's no doubt from the record, there's no doubt from the testimony, Mr. Marlin knew it was fertilized. He knew the date it was fertilized. He received the benefit and he kept that benefit and hasn't paid for it. We would ask that you award us the damages as for previously. Thank you. Thank you, Counselor Yargen. The court takes manner and advisement to render the decision in uniform.